JOHN C. CRIM *v.* STATE OF INDIANA.

[No. 3-1172A79. Filed April 17, 1973.]

*Myron J. Hack,* of South Bend, for appellant.

*Theodore L. Sendak,* Attorney General, *Stephen J. Cuthbert,* Deputy Attorney General for appellee.

SHARP, J.—On August 22, 1969 the Appellant was indicted for the crime of rape as defined in IC 1971, 35-13-4-3, Ind. Ann. Stat. § 10-4201 (Burns 1956). Appellant was charged with the rape of a 19 year old female on August 18, 1969. The defendant was tried before the trial court, commencing on October 28, 1971, without the intervention of a jury, was found guilty of the offense of assault and battery with the intent to commit a felony, to-wit: rape, and sentenced for a term of not less than one year nor more than ten years.

At earlier stages in this proceeding the Appellant was represented by another attorney. On February 24, 1970 the trial of the charge contained in this same indictment was commenced before a jury in the Pulaski Circuit Court. The following proceedings took place on that date and are here relevant for our consideration:

"Court: This is the case, this morning, of the State of Indiana vs. John C. Crim. This is Cause No. 10-102 on the docket of the Pulaski Circuit Court. Now the case is set for trial this morning, has been set for some time, and the record shows at this time that John M. Lyons from Valparaiso is your attorney, John—and you are the John Crim that is charged, are you not?
John Crim: Yes, sir.
Court: Well, do you know what Mr. Lyons is going to do, or what does he intend to do?
John Crim: I have been notified that Mr. Lyons has withdrawed [sic] from the case.
Court: Has he given you notice in writing or anything?
John Crim: No, he did not, sir.
Court: As of now he is still attorney of record and I have received no notice of any kind that he was withdrawing. No, have you got counsel this morning?
John Crim: No, I do not, not this morning.
Court: And, of course, you understand, do you not, what the charge and what the case is about?
John Crim: Yes, sir.
Court: Have you talked about that with Mr. Lyons?
John Crim: Yes, sir.
Court: Do you know what the charge is and what the penalty might be?

John Crim: Yes, sir.
Court: That is, if you were found guilty?
John Crim: Yes, sir.

\* \* \*

John Crim: Will I be allowed to defend myself, your Honor or can I ask the Court for counsel at this time?
Court: I thought we had talked about that, or I thought I had told you.
John Crim: Evidently Mr. Lyons hasn't withdrawed [sic] and it is hanging fire at this time, and as you stated at that time, it is getting late.
Court: As I recall, you had asked at that particular time about pauper counsel, and I told you that that would be a perfect request if you had someone file a petition for you, and you had ample opportunity and it hasn't been done. These things necessarily have to move along and this is why I didn't change any dates or anything.

\* \* \*

Mr. Crim: At this time, having my counsel not appear or not withdrawn, and finding out at this time about my request for change of venue, at this time I am going to have to ask that counsel be appointed for me.
Court: What is the reason for that?
John Crim: Well, there has evidently been confusion over apparently who my counsel was.
Court: There hasn't been any confusion insofar as the Court is concerned. You had counsel of record. Nothing shows that he has withdrawn or that he has been discharged and you had opportunity to—
John Crim: He had told me that he would send you a letter of withdrawal.
Court: I haven't received any.
John Crim: This would be a week ago this coming Wednesday that he had done so, so without him withdrawing kinda leave me—
Court: Have you talked to other counsel?
John Crim: Yes, sir, I have.
Court: With whom?
John Crim: Max C. Shirley.
Court: Is he going to appear for you?
John Crim: No, sir, your Honor, he was not able to appear on such short notice.
Court: When did you see him?
John Crim: I talked to Mr. Shirley—it has been a week now; I couldn't give no exact date.
Court: Did he refuse for that reason?

John Crim: That was one of his reasons, yes, sir. The other was the distance involved.

Court: The only thing I know is to require to ask you if you are going to sign this waiver. There is no need keeping these people waiting, and as far as I am concerned the case could go to trial because, John, you had opportunity.

John Crim: In other words, I would be forced to defend myself?

Court: You know that part of your rights are that you do not have to say anything or do anything. This is guaranteed you by the Constitution. You need not do anything. If you have a defense to present, you can.

John Crim: What I am asking you, your Honor, am I by law permitted to have counsel at this time?

Court: The law gives you that right.

John Crim: I request counsel at this time, then, you [sic] Honor.

Court: Who do you want for counsel?

John Crim: At this particular time if it was to go to trial today—within the next week, I could not say, your Honor, for the simple fact I wouldn't know whether or not counsel could be provided on account of prior commitments.

Court: This is the way this matter works: You are entitled to counsel. I think you know that well enough. On showing to the Court that you are a pauper and have no funds and no property and no means, then the Court is required to appoint one for you, but until that time this is your individual right and prerogative to select whoever you want, and while I told you it takes some evidence, as far as the court is concerned, and most others that I know of, to show what property you have and what resources you have. In other words, it is your burden to prove that you are a pauper.

John Crim: Your Honor, I have a case in Starke County at this time which I have a pauper attorney on at this time.

Court: Well, O.K., then didn't you have to present evidence in court?

John Crim: Yes, sir, I did. I don't have the time to do so in this case.

Court: John, we are not going to argue these things. I think you did have time and I think you were advised.

John Crim: You say my counsel has not withdrawn himself yet, and he has made it clear to me that he will not be here so it contradicts itself, your Honor.

Court: Well, are you going to sign this waiver or shall we begin your trial by Jury?

John Crim: At this time I don't believe I will sign the

waiver. I am asking for pauper counsel at this time to be represented.

Mr. Tankersley: May the State be heard, your Honor?

Court: Yes.

Mr. Tankersley: The defendant has raised here, as I see it, three issues: First, waiver of jury trial; secondly, the request for a change of venue; thirdly, the request for pauper counsel. He has already in court requested the waiver of a jury trial, and the Court has prepared a written waiver to that effect. Whether or not he waives jury trial at this time is immaterial to the State, or executes that waiver. The State will not consider that a jury trial is waived until he does sign the waiver on that matter. On the second point: the request for change of venue is clear out of order. There has to be a verified motion filed in open court and evidence presented. It has never been previously filed, presented, heard and determined by a court of justice—we are assuming, by this court—so any request for a change of venue is clearly out of order.

The request for pauper counsel: In my opinion this motion comes too late. This case was set for trial, I believe the docket shows, quite some time ago, and the defendant has had ample opportunity to confer with his attorney; he has been notified by his attorney of his withdrawal; he has not seen fit to secure any attorney to appear here today. In summary, I can only say that justice is a two-way road. The defendant should not be able to manipulate the court, jurors, the state, and all parties concerned were present today to try this case. It is justice we seek and it is justice that we are ready to render, and I do not think a defendant should be permitted to manipulate the court for his lack of diligence in being prepared today. If he wants to defend himself he has that right, but the state is ready to proceed to trial.

Court: I think the request for change of venue does come too late, as I also think the request for pauper counsel was not proper, because if for no other way you know by your own experience how you do this, and I am sure that I told you back in January what you necessarily would have to do, and this is February 24th, and as far as the Court is concerned, we can proceed to trial.

John Crim: Am I being denied counsel at this time, your Honor?

Court: You are denied pauper counsel at this particular time because I don't think there is any showing that you are a pauper.

John Crim: Well, in fact, I am, your Honor.

Court: Well, you have had opportunity to show to the Court that you own no property, that you couldn't afford an attorney. As a matter of fact, your contact with the Court is an indication that you were ready to re-marry and assume the obligation of a family. That doesn't indicate the status of a pauper. This is conflicting, too. And you had opportunity to have counsel file a petition for you, or you can file it yourself, making an affidavit showing that you have no property. So to say you are denied counsel is a little bit improper. We are not denying you counsel, but you are being denied pauper counsel this morning.

John Crim: Am I being granted time at this time, then, to obtain counsel?

Court: Well, here again: a week ago you said Mr. Lyons said he was going to withdraw. You have known this and you haven't had anyone contact the Court or to give us any notice.

John Crim: A week's time to prepare a criminal case such as is before the court at this time can't be prepared within a week's time. A man could't even decide within that length of time whether or not he would take the case.

Court: Well that hasn't been my experience in the practice of the law, so I think, John, we are ready to proceed.

John Crim: Do I have a right at this time to ask for a change of Judge?

Court: That is still controlled by the same rules: that it must be verified; it must be done at a certain particular time, and if it is done properly you can ask for it, but your request isn't proper. It would be the same thing as a change of venue—that is, from the county. The request must be verified. It must be done at a certain time.

John Crim: Counsel would have to do that, I presume.

Court: You can do it yourself if you know how, or if you consult with an attorney and find out how it is done. This, again, is something that I think you have had opportunity to do, and you were advised and you didn't do.

John Crim: This is the reason I ask for counsel at this time, your Honor.

Court: Well, as I said, we are ready to proceed. I think we have the Jury out here. The State is ready. You have been advised. Your counsel had been advised.

John Crim: In other words, I am being denied the rights of counsel at this time?

Court: No. You are getting what the Constitution provides for: the right to a trial.

John Crim: If I haven't got counsel, your Honor, I haven't got the right to trial.

Court: Yes, you have. It appears that probably you are not going to execute your waiver, the, for jury trial, and we probably better get the Jury in and proceed.

John Crim: Once this starts, it is going to be too late. Without counsel, your Honor, I can't see where I can go ahead with this at this time.

Court: Well, it isn't the Court's fault nor the State's fault that you are without counsel.

John Crim: You say Mr. Lyons had been informed of trial at this time and evidently he isn't here to represent me.

Court: Yes, he was informed on the 22nd of January.

John Crim: He was informed on the 22nd?

Court: Of this trial setting, and it was within a day or two or that, I think that you were informed.

John Crim: There has only been five days since he has requested withdrawal, your Honor, and up until that time he was my attorney, supposedly, and anything that has not been done it should have been done prior to this time I could not help.

Court: Well, we can't either, but I think under the circumstances we should just go ahead and proceed. I think we might just as well bring in the first twelve jurors.

Mr. Tankersley: Is it the defendant's wish to be tried by jury or by the Court?

John Crim: I will not sign a waiver at this time without having counsel, and you are asking me to go into court without counsel and be tried. That is nearly as bad as murder. It is the next thing to murder; it is a crime of rape.

Mr. Tankerlsley: The State is not asking the defendant to go to trial without counsel. He decided that for himself. I won't argue. We have called the jury. I am ready to examine jurors."

At the time the above proceedings occurred on February 24, 1970 the record disclosed that Appellant was being represented by counsel. Said counsel did not make a formal request to withdraw his representation of Appellant until two days later on February 26, 1970 which was then granted by the then trial judge in this case. This record is absolutely void of any reference by said trial judge to determine the whereabouts and status of Appellant's counsel on February 24, 1970 even though it is elementary the defense of a felony charge involves a serious professional obligation both to the defendant and to the court. Such counsel was an officer of the court and

had a distinct obligation to advise the court of his inability to attend and represent Appellant at a scheduled jury trial on a felony charge. The same counsel had previously prejudiced the Appellant's rights by the simple failure to strike counties after the regular judge of the Pulaski Circuit Court had granted a change of venue from Pulaski County resulting in the reassumption of jurisdiction of this case by the Pulaski Circuit Court.

The above quoted proceedings occurred before the Appellant had been formally arraigned.

Thereafter, the Prosecuting Attorney conducted an extensive voir dire examination of prospective jurors and the Appellant asked a few voir dire questions. The jury was then sworn by the Clerk to try the issue which was the charge in the indictment in this case. The trial court then gave preliminary instructions and the Prosecuting Attorney made his opening statement. During the lunch break on February 24, 1970 the Appellant contacted the Indiana Civil Liberties Union concerning the employment of counsel and at Appellant's request the court adjourned the trial until Wednesday, March 4, 1970. On March 3, 1970 the Appellant, now represented by his present counsel, filed a verified motion for continuance and discharge of the jury and on March 9, 1970 the State filed its response thereto. On March 9, 1970 the Appellant's motion for continuance and discharge of the jury was granted by the trial court. (These proceedings occurred during the time when the regular judge of the Pulaski Circuit Court was acting in this case. The later bench trial occurred after the above designated special judge was selected to act.)

We have carefully examined the Appellant's motion for continuance of the trial and discharge of the jury filed March 3, 1970, the response thereto of the State filed March 9, 1970 and the memorandum of law relating thereto filed March 9, 1970 by the Appellant. From such examination it is readily apparent that the question of jeopardy was very much in the mind of the trial court and counsel. Said record also fails to

disclose any explicit, intelligent and knowledgable waiver of the right to assert double jeopardy by the Appellant. The precise question as to double jeopardy was raised and preserved on at least seven distinct occasions from the beginning to the end of the second trial in this case. There can be no question that the double jeopardy was a critical issue throughout the proceedings in this case after February 24, 1970.

The decision of the trial court forcing the Appellant into a trial without counsel was clearly erroneous under the decision of our Supreme Court in *Fitzgerald* v. *State* (1970), 254 Ind. 39, 257 N.E.2d 305. In fact, the record in this case is a factually stronger one for the application of the principles announced in Fitzgerald. It would appear that the record here would meet the objections of the dissent in *Fitzgerald*. Here there is no indication whatsoever that the Appellant was in any way responsible for the absence of his counsel at the beginning of the jury trial. There was absolutely no showing in this case of any lack of diligence or good faith on the part of the Appellant in obtaining the presence of counsel when the jury trial commenced.

In this case the Prosecuting Attorney chose to push on for a trial of the Appellant without his counsel present over his repeated objections. This may be understandable in the context of busy court dockets and the harassment and pressures that prosecuting attorneys and trial judges must endure. However, in this case this effort of the Prosecuting Attorney, sanctioned by the trial court, had serious legal consequences.

The Fifth Amendment of the Constitution of the United States provides in part:

"Nor shall any person be subject for the same offense to be twice put in jeopardy of his life or limb. . . ."

Article I, Section 14, of the Constitution of the State of Indiana provides:

"No person shall be put in jeopardy twice for the same offense. No person, in a criminal prosecution shall be compelled to testify against himself."

In Oral Argument the Attorney General conceded that jeopardy has attached in this case but asserted a waiver and consent by Appellant.

In this case there is absolutely no question as to the identity of offenses in both the jury trial and in the subsequent one there is no question that the trial court had jurisdiction. The only question remaining is the question of a possible waiver of the right to assert double jeopardy by the Appellant.

The Double Jeopardy Clause of the Fifth Amendment to the Constitution of the United States has been made applicable to the States through the Due Process Clause of the Fourteenth Amendment. *Benton* v. *Maryland* (1969), 395 U.S. 784. Even without this the quoted provision of the Constitution of the State of Indiana and the cases thereunder would demand a result here consistent with that demanded by the cases under the Double Jeopardy Clause of the Fifth Amendment.

It is elementary under both the Indiana and Federal Constitutions and cases that jeopardy attaches when a criminal trial commences before a judge or jury and this point has arrived when a jury has been selected and sworn even though no evidence has been taken. *Gillespie* v. *State* (1906), 168 Ind. 298, 80 N.E. 829; *Gullet* v. *State* (1954), 233 Ind. 6, 116 N.E.2d 234; *Weinzorpflin* v. *State* (1844), 7 Blackford 186. The strong language in *Gillespie* at 168 Ind. 319 is highly relevant here:

"The jeopardy contemplated, our decisions affirm, attaches from the very moment the trial is begun, and the trial is deemed to have commenced at the time the jury is impaneled. It follows, therefore, that appellant was as actually in jeopardy when the jury was discharged as he would have been had the introduction of the evidence been completed at that time. That no legal necessity whatever is shown to have existed for the discharge of the jury over appellant's objection, is certainly manifest, and this question might be said to merit no further consideration. If, under the circumstances in this case, it could be affirmed that such a legal necessity for the discharge of the jury without appellant's

consent is shown to have arisen, then it would be an easy matter for a prosecuting attorney, in the midst of a criminal trial, to create a necessity for the discharge of the jury on the ground that the state's evidence was weak, but could be made stronger on another trial, or that some of his witnesses were absent, etc., and for these reasons secure the discharge of the jury and subsequently place the accused party upon trial for the same offense. If such procedure could be sustained, then it might truthfully be said that the constitutional provision in question is as empty as a bubble and of no avail in protecting an accused person against twice being put in jeopardy for the same offense. That the discharge of the jury under the circumstances in this case was wholly unwarranted on the part of the learned trial judge, and must be held to operate in effect as an acquittal of the appellant and a bar to any further or subsequent prosecution for the same offense, cannot be denied.

The Federal cases are to the same effect. *United States* v. *Jorn* (1971), 400 U.S. 470; *Green* v. *U.S.* (1957), 355 U.S. 184; *Wade* v. *Hunter* (1949), 336 U.S. 684; *Downum* v. *U.S.* (1963), 372 U.S. 734.

The non-application of double jeopardy is generally considered under three labels, i.e., "waiver", "consent", and "manifest necessity." Under the Indiana and Federal cases there are a number of basic fact situations excusing the application of the jeopardy clauses which are considered under one or more of the above labels. These include hung jury cases, cases where a juror has died or become incapacitated during a trial, and cases where a conviction is reversed on appeal and a new trial is ordered. *Harlan* v. *State* (1921), 190 Ind. 322, 130 N.E. 413; *Eskridge* v. *State* (1972), 258 Ind. 363, 281 N.E.2d 490; and *Gillespie* v. *State, supra.* See also *United States* v. *Perez* (1824), 9 Wheat. (22 U.S.) 579; *Simmons* v. *United States* (1891), 142 U.S. 148; *Thompson* v. *U.S.* (1894), 155 U.S. 271.

There is another group of cases which fly under the flag of "technical defect" where second trial is permitted after the first one aborts because of a technical defect in the first effort. *State of Illinois* v. *Somerville* (1972), 410 U.S. 458, 93 S. Ct. 1066. The demarcation and limitation of this group

of cases is well illustrated in *Downum* v. *U.S.* (1963), 372 U.S. 734; and *U.S.* v. *Jorn* (1971), 400 U.S. 470.

In *Downum* the jury had been selected and sworn. The Government thereafter moved for a discharge of the jury because key prosecution witnesses were not present. The prosecution knew of the absence of these witnesses before the jury was selected and sworn. As to the counts on which the witnesses were absent the trial judge discharged the jury and continued the trial as to other counts. A second trial was had on the counts subject of the discharge resulting in conviction. This conviction was reversed by the Supreme Court of the United States on the basis of double jeopardy which rejected the prosecution's assertion of manifest necessity.

In *Jorn* there was a prosecution for wilfully assisting in the preparation of fraudulent income tax returns. During the trial it was determined that key government witnesses had not been properly informed of their rights against self-incrimination. The trial judge declared a mistrial to give said witnesses an opportunity to consult with counsel. The Supreme Court of the United States sustained a plea of double jeopardy to a conviction resulting from a second trial of the same defendants on the same charge.

One of the key themes which runs through those cases which bar a second trial on the basis of jeopardy is prosecutorial error which causes or constitutes the termination of the first trial. See *Jorn,* 400 U.S. at 486; *Downum,* 372 U.S. at 737. Where the cause of the first aborted trial is prosecutorial error rather than the independent operation of a state procedural rule, the former but not the later will cause jeopardy to attach to the first proceeding.

In this case the first trial aborted simply because the prosecutor and trial judge insisted that the Appellant proceed in a jury trial in a felony case without counsel and to proceed into critical stages of such a trial, namely, selection of the jury and opening statements. This, in effect, amounted to jeopardy by coercion.

This case therefore falls outside of the technical operation of a state procedural rule as set out in *Somerville* and squarely within *Jorn* and *Downum*. There is a clear message in *Jorn* and *Downum* that "manifest necessity" cannot be created by errors on the part of the prosecutor or judge but must arise from some source outside their control, especially where such errors involve basic constitutional rights. The error of the first trial here causing the discharge of the jury was not of the Appellant's creation and involved fundamental rights to counsel clearly recognized in both the Indiana and Federal Constitutions and cases as clearly represented by the *Fitzgerald* case. The facts here fit equally well into the *Gillespie* mold and demand the same result.

We would emphasize that the constitutional principles and interpretations applied here are not amoung those of recent judicial creation but are of ancient vintage. These authorities permit only one result in this case, the determination that jeopardy attached in this case when the jury was sworn on February 24, 1970 and there was no consent, waiver or manifest necessity shown to relieve the application of double jeopardy here.

Therefore, the conviction is hereby reversed and Appellant ordered discharged.

Hoffman, C.J. and Staton, J., concur.

NOTE.—Reported at 294 N.E.2d 822.