**Darryl Lynn HINTON, Appellant (Defendant below),**

v.

**STATE of Indiana, Appellee (Plaintiff below).**

**No. 579S122.**

Supreme Court of Indiana.

Dec. 12, 1979.

Rehearing Denied Feb. 20, 1980.

William J. Moran, Highland, for appellant.

Theodore L. Sendak, Atty. Gen., Cindy A. Ellis, Deputy Atty. Gen., Indianapolis, for appellee.

HUNTER, Justice.

The defendant, Darryl Lynn Hinton, was charged with murder, Ind.Code § 35–42–1–1 (Burns 1979 Repl.), and tried by a jury. When the jury could not reach a verdict after several hours of deliberation, the court declared a mistrial and discharged the jury. A second jury trial resulted in a verdict of guilty of voluntary manslaughter, Ind.Code § 35–42–1–3 (Burns 1979 Repl.). Defendant was sentenced to fifteen years' imprisonment and now appeals raising the following two issues:

1. Whether the trial court erred in discharging the first jury over the objection of defendant when there was allegedly no showing of the manifest necessity for such discharge; and

2. Whether the trial court erred in imposing an excessive sentence on defendant which was manifestly unreasonable in light of the nature of the offense and the character of defendant.

A summary of the facts from the record most favorable to the state shows that the following events took place on May 4, 1978. Defendant had argued with Larry Harper at a local pool hall that afternoon. The owner of the pool hall broke up the ensuing fight and both men left. Shortly before closing time, defendant returned to the pool room with a gun, hunting for Harper. A friend of Harper's, Eddie Jackson, intervened and asked him why he was picking on Harper. Jackson called Harper his "brother" even though they were not related and pushed defendant away with both hands. Defendant told Jackson to "be cool" but Jackson kept pushing him and others in the room started moving towards him. Defendant fired three shots at Jackson. The fatal shot to the head was fired after Jackson had already fallen to the floor.

Defendant went to the police later that day and gave a voluntary statement. He admitted firing the gun but said he did not intend to shoot Jackson. He said that the other people in the pool room put him in fear of his life when they appeared to be about to jump him.

I.

The defendant first contends that the trial court erred in discharging the jury at the first trial over his objection that there was no showing of manifest necessity for the discharge. He claims his constitutional right against being placed twice in jeopardy has been violated since he was forced to have a second trial.

In this case, the jury at the first trial heard closing statements immediately after the lunch break on December 4, 1978, and then began deliberation. At 11:50 p. m. that evening the jury foreman informed the court that the jury could not reach a verdict. The judge at this time evinced some concern about one juror although the record does not show the basis for that concern. The jury was returned to the jury room for more deliberations, but soon signaled the judge that they were still unable to reach a verdict. At this time the judge said:

"All right, it is midnight now and. the jurors have signalled that they are unable to reach a verdict and they are crying and it is a difficult situation and I intend to declare a mistrial because of a hung jury and reset it for another trial."

The judge asked the jury foreman if he thought they would be able to reach a verdict and the foreman answered:

"There is no way that she is going to change her mind. . . . We are not able to reach a verdict." .

Defendant objected to the discharge of the jury but this was overruled.

■ It is well settled that a hung jury operates to discharge the application of the doctrine of double jeopardy and a new trial is not barred in such a situation. *Crim v. State*, (1973) 156 Ind.App. 66, 294 N.E.2d 822; *Harlan v. State*, (1921) 190 Ind. 322, 130 N.E. 413. This Court has consistently held that it is within the trial court's discretion to determine whether the discharge of the jury and the declaring of a mistrial are appropriate under the circumstances of the case. *Ayad v. State*, (1970) 254 Ind. 430, 261 N.E.2d 68; *State v. Larimore*, (1910) 173 Ind. 452, 90 N.E. 898; *State v. Leach*, (1889) 120 Ind. 124, 22 N.E. 111. It is also well settled that the length of time that a jury should be required to deliberate is a matter very much within the discretion of the court. *Cade v. State*, (1976) 264 Ind. 569, 348 N.E.2d 394; *Ayad v. State, supra*; *Walker v. State*, (1965) 246 Ind. 386, 204 N.E.2d 850.

■ Defendant asserts that there was no showing of a manifest necessity for the discharge in this case and implies that the jury did not spend enough time in deliberation. However, the discharge of a jury because of their inability to agree, when it is apparent to the court that they cannot agree upon a verdict after ample time spent in consultation, constitutes good cause for their discharge. *State v. Larimore, supra.*

■ In this case, the record shows that there were very strong indications to the judge that the jury would be unable to reach a verdict and the length of their deliberations was not unreasonably short. Therefore, we find no abuse of discretion in the discharge of the jury at this point.

II.

Defendant contends that the sentence imposed was manifestly unreasonable in light of the nature of the offense and the character of the offender. He also claims that the trial court erred in its sentencing procedure because there is no record of a presentence report as required by West's Ann.Ind.Code § 35–4.1–4–9 (1978).

■ It is true that failure to prepare such a report is reversible error, *Ware v. State*, (1963) 243 Ind. 639, 189 N.E.2d 704. However, in this case, the record demonstrates that the trial court ordered a presentence report. While the actual report is not in the record, remarks made by counsel at the sentencing hearing clearly show that the judge did have the presentence report before him. At one point, during this hearing defendant's counsel said:

"The Court has the pre-sentence investigation before you. . . . [Mr. Hinton] has indicated in the pre-sentence report his version of the crime."

Although the record is incomplete regarding the report, we find it is adequate to show that the required report was ordered and considered.

■ Defendant was convicted of voluntary manslaughter, a class B felony, and received a fifteen-year sentence. The penalty for a class B felony is set out in Ind. Code § 35–50–2–5 (Burns 1979 Repl.) as follows:

"A person who commits a class B felony shall be imprisoned for a fixed term of ten [10] years, with not more than ten [10] years added for aggravating circumstances nor not more than four [4] years subtracted for mitigating circumstances; in addition, he may be fined not more than ten thousand dollars [$10,000]."

Upon conviction it was clearly within the court's authority to determine whether there were aggravating or mitigating circumstances and accordingly to increase or decrease the fixed term of ten years as provided by the statute.

Defendant argues that the mitigating factors outweigh the aggravating factors in his case and cites such circumstances as his lack of a prior record (other than for juvenile offenses), his age of eighteen, and the provocation on the part of the victim and others who were present. However, the trial court listed some of the aggravating and mitigating circumstances which he found in this case from the nature of the crime itself and the character of the offender in the following:

"It seems to me that this was just a flat execution on your part. There's no other explanation for shooting a man in the head while he is lain prone before you. For that reason, the standard sentence is not adequate. But your age mitigates against the maximum sentence. The fact of your prior involvement or lack of prior involvement in criminal activity mitigates against the maximum."

The record further shows that the judge considered the presentence report, the fact that defendant was in need of correctional treatment that could best be provided by his commitment to a penal facility, and the fact that the imposition of a reduced sentence would depreciate the seriousness of the crime. All of these were proper considerations under our statute which support the addition of five years to the basic ten-year sentence. From the record of this case, we cannot find that the sentence was manifestly unreasonable as is required by our Rules for Appellate Review of Sentences, Rule 2, before we can revise a sentence authorized by statute. *Williams v. State*, (1979) Ind., 393 N.E.2d 149.

For all the foregoing reasons, there was no trial court error and the judgment of the trial court should be affirmed.

Judgment affirmed.

GIVAN, C. J., and DeBRULER, PRENTICE and PIVARNIK, JJ., concur.