**Plezz MEARS, Appellant,**

v.

**STATE of Indiana, Appellee.**

No. 49S00–8709–CR–886.

Supreme Court of Indiana.

Jan. 31, 1989.

Walter E. Bravard, Jr., Indianapolis, for appellant.

Linley E. Pearson, Atty. Gen., Gary Damon Secrest, Deputy Atty. Gen., Indianapolis, for appellee.

GIVAN, Justice.

A jury trial resulted in a conviction of appellant of Burglary, a Class C felony, for which he received a sentence of five (5) years, and Theft, a Class D felony, for which he received a sentence of two (2) years, which was enhanced by twenty (20) years by reason of his status as an habitual offender, the sentences to run concurrently.

The facts are: Kern Lankford owned the West Indies Gem Trading Company on the gallery level of the City Market in Indianapolis. Adjoining the gem trading company was Warren Tailors where appellant was employed. Lankford and appellant were acquainted. On December 9, 1986, appellant entered Lankford's shop and examined some gold chains, indicating he was interested in making a purchase. That night, at the close of business, Lankford locked his shop. He testified that appellant did not have permission to enter his shop after it was closed.

The following morning, at approximately 7:30, Lawrence Spector was in the process of opening Libby's Delicatessen on the lower level of the market. His attention was called to the West Indies Gem Trading Company on the upper level where he saw appellant behind the display counter. As Spector watched, appellant came around the counter and dropped down on the floor by the security gate which protected the business. Terry Sanchez, who was also watching appellant, heard the gate rattling as appellant forced it up sufficiently to allow him to roll beneath it.

When Lankford arrived, he discovered that some gold chains were missing. Detective Bolinger arrived to investigate, and after hearing the above facts, he obtained the address of appellant. He went to appellant's home, knocked on the door, and a female who, evidence later disclosed, was fourteen years of age, answered the door. Bolinger asked if Mears were present, and the girl opened the door wider and gestured toward appellant who was sitting on a couch.

Bolinger entered and as he engaged appellant in conversation he noticed six gold chains lying on the coffee table directly in front of appellant. Appellant's girl friend, who was the mother of the fourte-year-old girl who answered the door, also gave Detective Bolinger a gold chain which she was wearing around her neck. Bolinger then arrested appellant.

■ Appellant first claims he was subjected to double jeopardy by reason of the fact the trial court had sustained his motion for a new trial when a prosecutor's intern, in closing argument to the jury, stated that the State had the responsibility of proving beyond a reasonable doubt that appellant was guilty. He further stated that the State had done so, and the defendant had not done anything to rebut the State's proof of guilt whereupon defendant made a motion for mistrial which was granted by the trial court.

Appellant cites *Crim v. State* (1973), 156 Ind.App. 66, 294 N.E.2d 822 for the propo-

sition that when the cause of the mistrial is prosecutorial error, jeopardy will attach. This type of situation was recognized by the Supreme Court of the United States in *Oregon v. Kennedy* (1982), 456 U.S. 667, 102 S.Ct. 2083, 72 L.Ed.2d 416. However, the attachment of jeopardy was limited to those cases where it was apparent the prosecuting attorney deliberately provoked the defendant into moving for a mistrial in order to obtain a new trial when things had not gone well for the State in the first instance.

This proposition of law also was recognized by this Court in *Woods v. State* (1985), Ind., 484 N.E.2d 3. This matter was placed squarely before the trial court at the commencement of the prosecution in the instant case. However, the trial court, after hearing argument of counsel, denied the motion for discharge on the ground of double jeopardy. There is nothing in this record to indicate that the State had encountered any difficulty in the prosecution of appellant to warrant any supposition that the State was deliberately attempting to create error to gain a new trial. The remark of the intern at most was a poor choice of words which justified the trial court in ordering a new trial upon appellant's motion.

We see nothing in this record which brings the case within the parameter of deliberate provocation on the part of the State in order to gain a new trial. We find no error in the trial court's denying the motion for discharge on grounds of former jeopardy.

■ Appellant claims the trial court erred in denying him his motion to suppress evidence obtained when Detective Bolinger entered his home. He claims that inasmuch as Bolinger had neither an arrest warrant for him or a warrant to search his home, his entry and subsequent seizure of the contraband goods was illegal; thus, all of such evidence should have been suppressed. He takes the position that a fourteen-year-old girl could not consent to a search of the premises. Although he concedes that a third person with common authority over the premises may consent to

a search, citing *Brooks v. State* (1986), Ind., 497 N.E.2d 210, he takes the position that the fourteen-year-old girl, although a resident of the home, was not of sufficient age to give consent for the search.

We would point out, however, that no search occurred in this case nor was one requested. Detective Bolinger merely knocked on the door and asked if appellant were present. In fact, Detective Bolinger was only in the preliminary stages of his investigation and at the time was seeking to discuss what facts he did have with appellant. Although it was the fourteen-year-old girl who opened the door for appellant, she did so in the presence of her mother and appellant. When Bolinger inquired as to the presence of appellant, the girl merely gestured toward appellant who was in plain view, and Bolinger entered without any objection from either appellant or the girl's mother. No search was conducted, the necklaces were in plain view on a coffee table directly in front of appellant who was seated on a couch. The girl's mother voluntarily removed a gold chain from her neck and gave it to Detective Bolinger.

We see nothing from the facts in this case which would require Detective Bolinger to have either an arrest warrant or a search warrant. Bolinger made no request to search the premises nor was any such permission given by the girl. The facts in this case merely demonstrate a consensual entry into the home and the recovery of contraband goods which were in plain view when the detective entered the room. Objects which are in plain view of an officer when seized are not the product of a search. *Gann v. State of Indiana* (1988), Ind., 521 N.E.2d 330.

The trial court did not err in refusing to suppress the evidence.

■ Appellant claims the jury verdict finding him guilty of both burglary and theft was not supported by sufficient evidence. He first claims there was no proof that anyone broke into and entered the West Indies Gem Trading Company. We cannot agree with appellant's observation in this regard. There was direct evidence

of the witnesses who saw appellant in the place of business where he had no right to be at a time when that business was closed. While the witnesses watched, appellant exited the business by displacing a security gate sufficiently to allow him to squeeze under it.

 The jury was entitled to believe he gained entrance in the same fashion. In order to constitute a breaking, it is not necessary that there be a fracturing or injury to a material part of the building such as a door or window. Breaking includes the putting aside of any material part of the building intended as security against invasion. In the case at bar, forcing himself under the security gate was sufficient to constitute a breaking. *See Barrick v. State* (1954), 233 Ind. 333, 119 N.E.2d 550.

 Appellant also claims there is lack of proof of the ownership of the allegedly stolen property which was found in his possession. Appellant bases his contention on the fact that when Lankford was testifying in behalf of the State he was shown a photograph of the necklaces which were recovered from appellant's home. He stated it was difficult for him to identify the necklaces in the photograph as those taken from his place of business. However, it was also established from the evidence that when Detective Bolinger recovered the necklaces from appellant's home he took them to Lankford who upon directly examining the necklaces identified them as being the ones missing from his place of business.

The fact that Lankford could not identify the necklaces positively from photographs but identified them when returned by Detective Bolinger was a question placed before the jury, from which they had a right to make a factual determination as to the identification of the allegedly stolen property. The evidence was ample for them to make the determination that the property found in appellant's home was in fact the property taken from Lankford's place of business.

 Appellant claims the trial court committed reversible error when it first read the charging affidavit concerning the habitual offender charge to the jury and stated that there were three prior felony convictions, when in fact as the trial progressed, the court ruled that a former Kentucky conviction should not be placed before the jury because of insufficient records. Although this left the statutory requirement of two prior convictions before the jury, appellant argues that since the court had erroneously informed the jury there would be three former convictions and only two former convictions materialized the jury was thus misled and prejudiced against him.

However, after the court ruled that the Kentucky conviction could not be established, the trial judge instructed the jury that they were to disregard his statement concerning three prior convictions. The fact remains that although only two prior convictions are necessary for the jury to find that a defendant is an habitual offender, the fact that the State may plead and prove more than two prior convictions is merely surplusage. *St. Mociers v. State* (1984), Ind., 459 N.E.2d 26; *Hensley v. State* (1983), Ind., 448 N.E.2d 665.

 Appellant also claims there was no evidence of probative value that he was the same person who had been convicted previously. As appellant himself concedes, his fingerprints were matched with those in the records presented by the State to establish the former convictions. However, appellant claims in addition to such evidence there should be eyewitness testimony that he is the same person as that person who was formerly convicted. Such contention was rejected by this Court in *Sapp v. State* (1987), Ind., 513 N.E.2d 178 and *Meredith v. State* (1987), Ind., 503 N.E.2d 880.

Appellant also contends that one of the prior convictions was for theft of less than $100 for which he received a sentence of less than one year. He concedes that this Court has held that such convictions are felony convictions, citing *McBrady v. State* (1984), Ind., 459 N.E.2d 719; *Underhill v. State* (1981), Ind., 428 N.E.2d 759. The

evidence in this case clearly indicated that appellant had in fact been twice previously convicted of felonies.

Appellant also claims that the record submitted by the State did not establish that the second prior felony was committed after he had been sentenced for the first prior felony. However, the record indicates that the information filed in 1977 for theft shows that the crime was committed on March 14, 1977 and that appellant was sentenced for said crime on July 20, 1977. The 1978 crime of robbery was shown to have been committed in November of 1978 and appellant was sentenced for that crime in June of 1979. Thus the State's evidence complies with the statutory requirement.

The trial court is affirmed.

SHEPARD, C.J., and DeBRULER and PIVARNIK, JJ., concur.

DICKSON, J., concurs in result without separate opinion.