Adrian Anthony BROWN, Appellant (Defendant Below),

v.

STATE of Indiana, Appellee (Plaintiff Below).

No. 2–178A22.

Court of Appeals of Indiana, Second District.

June 20, 1979.

---

Patrick L. McCarty, Indianapolis, for defendant-appellant.

Theo. L. Sendak, Atty. Gen., Wesley T. Wilson, Deputy Atty. Gen., Indianapolis, for plaintiff-appellee.

BUCHANAN, Chief Judge.

### STATEMENT OF THE CASE

Adrian Anthony Brown (Brown) appeals from his conviction of Commission of a Felony While Armed (Robbery), claiming the second trial was barred by the double jeopardy clauses of the Indiana and United States Constitutions, and that certain evidence was improperly admitted at his second trial.

We affirm.

### FACTS

On October 13, 1976, Brown, who was free on bond, failed to appear in the Criminal Court of Marion County at the time set for his trial (or thereafter). Over objections by both the State and defense counsel the trial judge ordered the trial to proceed.

After some preliminary motion skirmishing, the court called Brown's trial counsel as a witness, who testified in response to questioning by the court that he had talked with Brown the previous evening at approximately 8 p. m., and that Brown was aware of the time set for his trial.

With both sides refusing to participate in the proceedings, the jury was empaneled and sworn by the court.[1]

After the jury had been removed from the courtroom, Wesley Jackson, Brown's

---

1. Court: The jury is with the State.
 Mr. Schornhorst: Your Honor, I cannot proceed.
 Court: The jury is with the Defendant.
 Mr. Maguire: I can't either Your Honor.
 Court: Do you have any challenges? Do either side have any challenges? (no answer given). We have a jury. The bailiff will call the next for alternate. All challenges have been used or forfeited. Call the next for alternate.

 . . . . .

 Court: The alternate is with the State.
 Mr. Schornhorst: Your Honor, I cannot proceed and I object to this entire procedure.

 . . . . .

 Court: The prosecutor is not running the Court. The alternate is with the defense.
 Mr. Maguire: The defense has no questions and also continues its objection.

bail bondsman, was called to the stand. Jackson testified that he had contacted Brown's parents (the sureties on the bail bond) during the past five days, and had advised them of the time set for trial.

The trial judge found that Brown had voluntarily absented himself from the trial, and that the trial would proceed.[2]

The trial court was then informed by Marion County Prosecutor James Kelley that without Brown present in the court room the State's witnesses would be unable to sufficiently identify Brown to prove the State's case. Deputy Prosecutor Linda Wagoner was placed under oath and testified confirming the prosecutor's statement. The trial court then declared a mistrial and dismissed the jury.

Brown did not appear at this proceeding. A re-arrest warrant issued October 13, 1976 was served April 30, 1977.

On September 22, 1977, Brown was tried and found guilty of Commission of a Felony While Armed, to-wit: Robbery.

## ISSUES

*ISSUE ONE*—Did Brown's second trial violate the double jeopardy clauses of the Indiana and United States Constitutions?[3]

*ISSUE TWO*—Did the court improperly admit into evidence two photographs of the defendant's car?

*ISSUE THREE*—Was there a sufficient chain of custody established for a loan application which was admitted into evidence?

*PARTIES' CONTENTIONS*—As to ISSUE ONE, Brown contends that jeopardy attached at his first trial, and that the second trial therefore violated his right not to twice be put in jeopardy for the same offense. The State maintains that the first

trial was a void proceeding due to Brown's absence, and that therefore jeopardy did not attach.

As to ISSUE TWO, Brown contends that neither a proper foundation nor a proper chain of custody was established for admission of the photographs. The State asserts the photographs were properly admitted.

As to ISSUE THREE, the defendant asserts that the State failed to establish a chain of custody for a loan application admitted into evidence. The State maintains that a chain of custody is not required for admission of non-fungible items such as the application, and even if such a chain is required, it was sufficiently established.

## DECISION

*ISSUE ONE*

*CONCLUSION*—Brown's second trial did not violate the prohibition against double jeopardy guaranteed by the Indiana and United States Constitutions.

In order to decide the double jeopardy question we must first determine whether the trial court properly proceeded with the first trial despite the absence of the defendant Brown.

### I.

It is established that a defendant by his conduct may waive both his statutory and constitutional right to be present at his own trial. *Taylor v. State* (1978), Ind.App., 383 N.E.2d 1068; *Broecker v. State* (1976), Ind.App., 342 N.E.2d 886. *See Snyder v. Massachusetts* (1934), 291 U.S. 97, 54 S.Ct. 330, 78 L.Ed. 674; *McCorkle v. State* (1859), 14 Ind. 39. A defendant's failure to appear at the time and place designated for his trial may amount to such a waiver. *Taylor v. State, supra; Broecker v. State, supra.*

---

**2.** The Court has, and again finds, that the defendant has voluntarily absented himself and that is based on the testimony of Mr. Maguire that he talked to him last night. He agreed to be here and here it is this morning and he is not here. Now the Appellate Court may hold that that is inadequate evidence. They may speculate that maybe a flock of gremlins caught him

and tied him up to an oak tree out here someplace or fence post so that he couldn't get here. (Transcript, P. 250)

**3.** Ind.Const. art. 1, § 14; U.S.Const. amend. V (made applicable through U.S.Const. amend. XIV).

The efficient functioning of the criminal judicial system demands such a rule.

The rationale undergirding this rule was plainly stated in *United States v. Tortora* (2d Cir. 1972), 464 F.2d 1202, *cert. denied* 409 U.S. 1063, 93 S.Ct. 554, 34 L.Ed.2d 516, and was quoted extensively in *Broecker v. State*:

> The deliberate absence of a defendant who knows that he stands accused in a criminal case and that the trial will begin on a day certain indicates nothing less than an intention to obstruct the orderly processes of justice. No defendant has a unilateral right to set the time or circumstances under which he will be tried. . .

> Without this obligation on the accused the disposition of criminal cases would be subject to the whims of defendants who could frustrate the speedy satisfaction of justice by absenting themselves from their trials. Today more than ever the public interest demands that criminal proceedings be prosecuted with dispatch . . . and the greater the delay between the charge and the trial date, the greater the likelihood that witnesses will be unable to appear or that their memories will have faded and their testimony will be less convincing. That a defendant can be convicted of bail-jumping if he fails to appear at trial is not sufficient to vindicate the public interest; the public is entitled to a speedy disposition of the criminal charges absent a finding by the court that good reasons exist for delay.

464 F.2d at 1208–09.

In *Taylor v. State, supra,* the defendant failed to appear at 9 a. m. for the second day of his trial. The judge waited for one hour, but when the defendant had not arrived proceeded with the trial. An hour later the defendant arrived explaining to the judge that he was late because of transportation problems. Our court recognized that emergency situations will occasionally arise which prevent a defendant from arriving at a trial on time, and that a defendant's failure to appear on time, in and of itself, is not a waiver of his right to be present. But it was also recognized that a defendant's continued absence coupled with a failure to notify the court and provide it with an adequate explanation therefor does constitute such a waiver . . . and the decision to proceed with trial is in the discretion of the trial court, reviewable only for an abuse of discretion.

■ Although we agree with the Third District of this court that the better procedure is to wait a reasonable period of time[4] before proceeding without the defendant, *Taylor v. State, supra,* we do not believe the failure to delay proceedings is necessarily error.

The trial court in this case took judicial notice of its records that Brown was personally present at this arraignment when the trial date was set; there was testimony by Brown's counsel that on the previous evening he had reminded Brown of the trial setting; there was testimony by Brown's bail bondsman that he had advised Brown's parents five days before trial of the time of trial, and the court records showed that Brown lived in Indianapolis where the trial was held. It also subsequently became apparent that Brown was not merely delayed, but had "jumped bail," not being reapprehended until six months later. As the court concluded in *United States v. Tortora*:

> Having received actual notice when trial proceedings will take place, in the absence of some compelling excuse the defendant cannot obstruct the course of justice by absenting himself from the process . . . . . .

464 F.2d at 1209.

■ So we must conclude that the first "trial" could properly be conducted in Brown's absence and the trial court did not abuse its discretion in proceeding under these circumstances. Brown waived his constitutional right to be present.

Having so concluded we turn to the double jeopardy problem.

---

**4.** What is reasonable depends upon the circumstances of the case. *Taylor v. State, supra.*

## II.

A case of ancient vintage created the test for determining whether an initial mistrial followed by a second trial constitutes a violation of the prohibition against double jeopardy. In *United States v. Perez* (1824), 22 U.S. (9 Wheat.) 579, 6 L.Ed. 165, Justice Story declared:

We think, that in all cases of this nature, the law has invested Courts of justice with the authority to discharge a jury from giving any verdict, *whenever, in their opinion, taking all the circumstances into consideration, there is a manifest necessity for the act, or the ends of public justice would otherwise be defeated.* They are to exercise a sound discretion on the subject; and it is impossible to define all the circumstances, which would render it proper to interfere. To be sure, the power ought to be used with the greatest caution, under urgent circumstances, and for very plain and obvious causes; and, in capital cases especially, courts should be extremely careful how they interfere with any of the chances of life, in favor of the prisoner. But, after all, they have the right to order the discharge; and the security which the public have for the faithful, sound, and conscientious exercise of this discretion, rests, in this, as in other cases, upon the responsibility of the judges, under their oaths of office. (emphasis added)

22 U.S. (9 Wheat.) at 580, 6 L.Ed. 165. In the 155 years since that statement, the United States Supreme Court has consistently restated the "manifest necessity" language of this case. And the Supreme Court has just as consistently refused to formulate a mechanical test for all circumstances. *See Arizona v. Washington* (1978), 434 U.S. 497, 98 S.Ct. 824, 54 L.Ed.2d 717; *Illinois v. Somerville* (1973), 410 U.S. 458, 93 S.Ct. 1066, 35 L.Ed.2d 425; *United States v. Jorn* (1971), 400 U.S. 470, 91 S.Ct. 547, 27 L.Ed.2d 543; *Downum v. United States* (1963), 372 U.S. 734, 83 S.Ct. 1033, 10 L.Ed.2d 100; *Gori v. United States* (1961), 367 U.S. 364, 81 S.Ct. 1523, 6 L.Ed.2d 901.

In *Arizona v. Washington, supra,* the United States Supreme Court's latest statement on double jeopardy, the court emphasized that the term "manifest necessity" cannot be given a literal interpretation. Instead, the court stated, "we assume that there are degrees of necessity and we require a 'high degree' before concluding that a mistrial is appropriate." 98 S.Ct. at 831. The court went on to hold that whether a high degree of necessity for declaring a mistrial exists rests in the sound discretion of the trial court, and will be reversed only for an abuse thereof.

This court's opinion in *Crim v. State* (1973), 156 Ind.App. 66, 294 N.E.2d 822, while not in point, recognizes the "manifest necessity" principle. There are no Indiana cases deciding if an initial mistrial based on the defendant's absence followed by a second trial constitutes a violation of the prohibition against double jeopardy.

The question posed then is whether "manifest necessity" for a mistrial existed due to the voluntary absence of the defendant Brown from his own trial, thereby depriving the State of identification testimony necessary to make its case. The key to the answer is Brown's voluntary absence from the trial.

██ It is true that the granting of a mistrial merely to allow the State to strengthen its case at a second trial is not a matter of manifest necessity, and a second trial is barred. *Gillespie v. State* (1906), 168 Ind. 298, 80 N.E. 829; *Crim v. State, supra.* As Justice Frankfurter stated in *Gori v. United States, supra,* 367 U.S. at 369, 81 S.Ct. at 1526–27, 6 L.Ed.2d at 905, "[T]he discretion of the trial judge may be abused . . . [if] a judge exercises his authority to help the prosecution, at a trial in which its case is going badly, by affording it another, more favorable opportunity to convict the accused." And manifest necessity cannot be created by errors on the part of the judge or the prosecutor. *Crim v. State, supra.*

██ However, this is not a case in which the manifest necessity was created by an

erring judge, *see Crim v. State, supra,* or a blundering prosecutor, *see Downum v. United States, supra; McNeal v. Hollowell* (5th Cir. 1973) 481 F.2d 1145. Rather it was created by the defendant himself by "jumping bail" and failing to appear at the time and place set for trial. The defendant's right to be tried by a particular jury "must in some instances be subordinated to the public's interest in fair trials designed to end in just judgments." *Wade v. Hunter* (1949), 336 U.S. 684, 689, 69 S.Ct. 834, 837, 93 L.Ed. 974.

A defendant cannot stack the deck in his favor, then claim the pot when the judicial system refuses to play—and the courts of this country have so held.

The Fifth Circuit Court of Appeals in *McKissick v. United States* (5th Cir. 1967), 379 F.2d 754, upheld a second trial because an initial mistrial had been declared due to the defendant's perjury on the witness stand. In dismissing the defendant's double jeopardy claim, the Second Circuit commented:

> [T]he appellant had no constitutional right, overriding the public interest, to have his case determined by a tribunal whose processes he had himself thus frustrated and abused.

379 F.2d at 761.

In *State v. Aragon* (1976), 89 N.M. 91, 547 P.2d 574, involving a defense counsel's failure to make a motion to suppress until after the trial had begun,[5] the New Mexico court found it contrary to the ends of public justice to require an initial trial to be completed where the defendant, by his intentional conduct, had prejudiced the State's case. The same result is found in *State v. Bishop* (1971), 6 Wash.App. 146, 491 P.2d 1359, in which a defendant's outburst in front of the jury as to certain suppressed evidence resulted in the granting of a mistrial, but did not preclude a second trial. *See also Wright v. Boles* (N.D.W.Va.1967), 275 F.Supp. 571; *Adkins v. Smith* (Fla. 1967), 205 So.2d 530. Cf. *Lewis v. State* (Alaska 1969), 452 P.2d 892 (recognizing that certain misconduct by defendant or his counsel may allow a mistrial and reprosecution, but holding the "minor misconduct" in this case did not create a manifest necessity for a mistrial).

■ A defendant's actions severely prejudiced the State's ability to prove its case in *People v. Paquette* (1972), 31 N.Y.2d 379, 339 N.Y.S.2d 959, 292 N.E.2d 17. Key prosecution witnesses failed to appear at the resumption of the initial trial because of threats to their safety. The New York Court of Appeals found that as the absence of the witnesses was directly attributable to the defendant, the declaration of a mistrial did not bar reprosecution, saying:

> If the act of a defendant himself aborts a trial, he ought not readily be heard to say that by frustrating the trial he had succeeded in erecting a constitutional shelter based on double jeopardy.

31 N.Y.2d at 380, 339 N.Y.S.2d at 960, 292 N.E.2d at 18.

Brown's purposeful conduct in absenting himself from the trial thereby preventing the State from effectively presenting its case, fits into this line of cases.

■ We realize that the trial court must act responsibly and deliberately in declaring a mistrial, giving consideration both to the defendant's rights to have his trial completed and to procedural alternatives to a mistrial, such as a continuance. *Arizona v. Washington, supra; United States v. Jorn, supra.* Although there is nothing in the record from which we can discern that the trial court considered a continuance rather than a mistrial, we do not find that this was an abuse of discretion. While the trial began on schedule, it was not until a considerable time later that the mistrial was declared. During this period, three witnesses testified, there was extensive legal argument outside the presence of the jury, and Marion County prosecutor James Kelley was summoned to the courtroom

---

**5.** The trial in that case arose before a New Mexico decision that a motion to suppress was waived unless timely made.

where he, too, engaged in the legal discussion. These transactions took up forty-five pages of the record, during which time the defendant continued his absence. None of the parties at any point moved for or suggested a continuance to afford Brown additional time to appear. Also, we are aware that the trial court specifically found that Brown was voluntarily absenting himself from the proceedings.

In this context we do not believe the trial court abused its discretion in granting an immediate mistrial rather than granting a continuance.

■■■ Although not argued by the State, the record indicates that Brown, through his counsel, may have consented to the mistrial; this is so despite counsel's insistence at the time that he was not waiving a double jeopardy claim. A mistrial sought or consented to by the defendant does not bar his reprosecution.[6] *United States v. Burrell* (7th Cir. 1963), 324 F.2d 115; *Cabell v. State* (1978), Ind., 372 N.E.2d 1176; *Wilson v. State* (1976), Ind.App., 348 N.E.2d 90; *Mooberry v. State* (1973), 157 Ind.App. 354, 300 N.E.2d 125. During the initial trial, defense counsel objected to "the proceedings in their entirety" and that "nothing should have been done from the point that the defendant was not here."

While not a specific motion for a mistrial, the only logical deduction is that the defense counsel wished to have the current proceedings abandoned. Such objections appear to be tantamount to a motion for a mistrial, for no other remedy effects the result which he was seeking. As such it would have foreclosed the defendant's double jeopardy claim, regardless of defense counsel's assertion to the contrary.

However, we need not base our holding on waiver arising from an implied motion by Brown's counsel for a mistrial. As indicated, our basis is the manifest necessity for a mistrial created by Brown's purposeful conduct in absenting himself from the trial thereby preventing the State from effectively presenting its case.

## ISSUE TWO

*CONCLUSION*—The court properly admitted the photographs in question.

■■■ The basic law for admission of a photograph into evidence is not hard to find. In 13 I.L.E. *Evidence* § 165 it is written:

If a photograph of a person, place, or thing is proved to be a true representation of that which it purports to represent, it will generally be considered to be competent evidence of anything of which it is competent or relevant for a witness to give a verbal description.

*Id.* at 44. *See also* McCormick On Evidence (2d ed. 1972) § 214.

■■■ In the present case, Officer McGivern of the Indianapolis Police Department, testified as to the description of the car being sought in connection with the robbery of Pacific Finance. He also testified as to the location at which the car matching that description was found, then further described the car found at that location. The officer identified the two photos admitted into evidence as true and accurate representations of that vehicle as it appeared on that day.

The above evidence established a sufficient foundation and adequate basis for admission of the photographs which were simply illustrations of what Officer McGivern had already testified to.

## ISSUE THREE

*CONCLUSION*—No chain of custody need have been established for the admission of the loan application.

■■■ If evidence is such that it may be recognized and identified by a witness, and tampering or alteration is not a realistic threat, no chain of custody need be estab-

---

**6.** An exception to this rule is made in cases in which there has been judicial or prosecutorial overreaching. *Mooberry v. State, supra*; for example, a prosecutor whose case is going bad-ly intentionally inserts error in order to provoke the defendant to move for a mistrial. See also *Crim v. State, supra.*

lished. *Johnson v. State* (1977), Ind., 370 N.E.2d 892.

Here Mrs. Tungate identified the loan application as one which she was personally filling out for Brown just prior to the robbery. A chain of custody need not be established for such non-fungible evidence so clearly identified and identifiable.

We might add that there was direct testimony by three eye witnesses that Brown committed the robbery.

Affirmed.

SHIELDS, J., concurs.

SULLIVAN, J., concurs in result.