**Walter Raymond WHITE, Appellant,**

v.

**STATE of Indiana, Appellee.**

No. 182 S 16.

Supreme Court of Indiana.

March 5, 1984.

See also 271 Ind. 174, 391 N.E.2d 596.

Frank E. Spencer, Indianapolis, for appellant.

Linley E. Pearson, Atty. Gen., Michael Gene Worden, Deputy Atty. Gen., Indianapolis, for appellee.

PIVARNIK, Justice.

Defendant-Appellant Walter Raymond White was found guilty by a jury in the Marion Superior Court of two counts of murder. He subsequently was sentenced by the trial judge to forty years imprisonment for each conviction, said sentences to be served consecutively. Appellant now directly appeals. All but one of Appellant's issues regard the fact that Appellant was tried and convicted after a mistrial was declared in Appellant's first trial. Appellant specifically contends that the trial court erred by granting said mistrial, by denying Appellant's Motion to Dismiss and Discharge, by denying Appellant's Motion for Separate Trial and by not allowing Appellant to present his double jeopardy question to the jury during his second trial. Appellant also raises an alleged error in his sentencing by the trial judge.

Count I charged Appellant with the murder of Connie Sue Many. Count II charged him with the murder of Lazalia Stack. Both murders occurred on the 29th of December, 1977, following a gathering at which Appellant, the two victims and other persons were socializing and drinking. An argument ensued and Appellant left returning with his shotgun. During the confrontation that followed, he shot the two victims with his shotgun. Appellant does not deny that he shot the two victims and does not question the sufficiency of the evidence by which he was convicted of the two murder counts.

The incident that led to the granting of a mistrial in Appellant's first trial transpired during the third day of that trial. On March 12, 1979, after the jury had been selected and sworn, the State began its presentation of evidence. On March 13, 1979, Dr. Josephino Aguilar was called as a witness for the State. Dr. Aguilar, a Deputy Coroner for Marion County, had performed autopsies on the bodies of the two victims. Difficulty arose when Dr. Aguilar refused to answer certain questions posed by the State, the defense and the trial court. He testified about the autopsies of the victims and gave descriptions of the wounds he found. He further testified that he found metal pellets in their bodies. He refused, however, to give an expert opinion about the cause of the victims' deaths and likewise refused to give other medical opinions requested of him. Dr. Aguilar explained that he was at trial only as a pathologist and not as a forensic pathologist. He also complained of not being accorded certain courtesies to which he thought himself entitled. Dr. Aguilar again was called to testify on the following day and he again refused to answer questions concerning his opinion about what caused the death of the victims in this case. Dr. Aguilar again stated that he was not there as an expert witness and was not a forensic pathologist. After several attempts at having Dr. Aguilar answer the questions, the trial judge found Dr. Aguilar to be in direct contempt. The following subsequently ensued:

"*Court:* This is in the record?

*Reporter Hatfield:* Yes, sir.

*Court:* If there is to be any appeal or contesting of the Court's decision, the Court has a right to direct the trial of a case. This i[s] a very serious multiple murder proceeding, and, we have been in trial here, we're going into the third day, and, we're not going to permit the ends of justice to be frustrated by Dr. Aguilar, who apparently feels that every time he opens his mouth he's supposed to be paid for it. Now, I understand that the Coroner has a contract with Wishard Hospital whereby the Coroner pays them $80,000.00 to perform autopsies, and, in return they are to provide doctors, and, expert testimony, isn't that right, Miss Ressler?

*Ms. Ressler* [Deputy Prosecutor]: Yes, Judge.

*Court:* And, he is a Deputy Coroner?

*Ms. Ressler:* Yes.

*Court:* He has a duty to the public, just like we have a duty.

*Ms. Ressler:* Absolutely.

*Court:* So, this is in the record, he refused four times yesterday, to testify. It's the first time in my twenty years experience, I've ever heard a doctor refuse to testify, and, there comes a point in proceedings where you've got to draw the line where the Court has to do what is in the best interest of the public. You can't allow a trial of this serious nature become (sic) a circus, just because someone decides that they might or might not testify. As a result of this development in this case, because of the adverse effect it obviously would have on the Jury, and, the fact that it would deprive the State of an important witness, and, reflect on his credibility, t[he] Court at this time is going to declare a mistrial in the case, set the submission of the cause aside, and discharge the Jury, because I don't think that we can proceed fairly, further in the matter. I don't think that I have any choice. I have never, in a murder case, ever had anything, like this to happen, and, for both sides to receive a fair trial, we cannot allow collateral disruptive influences to color the testimony that we've heard. I don't see any alternative and, that's what I'm going to do at this time so, we'll show that there has been a mistrial declared on the basis of Dr. Aguilar's performance, and, refusal to testify, and, submission of the cause is set aside, and the Jury is discharged. We will reset this case for trial, in the immediate future, at such time as Counsel for the State and, the Defendant can confer on it, and start over again; I don't see any alternative.

*Mr. Hollingsworth:* [Appellant's trial counsel] Well, for purposes of the record, we don't concur in it, in—.

*Court:* Well, I'm not asking either one of you whether you concur or not, that's —so, you can take the Jury out. Again, I want to thank you for your service; I'm sorry this terminated this way, but, I just don't think the Court can tolerate a witness who refuses to testify under Court order, particularly a doctor who is a professional man, and, licensed to practice medicine. I don't think I had any alternative, because it reflects adversely on the credibility involving the State's witness, and, I would do the same think if it were to happen as far as the Defense is concerned. It's the first time in twenty years I've ever been confronted with anything like this. I have had Dr. Aguilar testify in other cases in this Court isn't that correct?

*Reporter Hatfield:* Yes, sir.

*Court:* Many of them, and, given his expert opinion, and, yesterday when he refused to testify, I was quite shocked, by the fact that he refused to testify, couldn't believe it, so, I think this is the only remedy, is to find him Guilty of Direct Contempt, levy a fine, and, proceed according to Statute so, again, I'm sorry. We'll try again next time."

■ It is well-established that it is within the sound discretion of the trial court to determine if a legal necessity exists for the discharge of a jury. The United States Supreme Court has held:

"We think, ..., the law has invested Courts of justice with the authority to

discharge a jury from giving any verdict, whenever, in their opinion, taking all the circumstances into consideration, there is manifest necessity for the act, or the ends of public justice would otherwise be defeated."

*Wade v. Hunter*, (1949) 336 U.S. 684, 689, 69 S.Ct. 834, 837, 93 L.Ed. 974, 978 (*quoting United States v. Perez*, (1824) 9 Wheat. 579, 6 L.Ed. 165). The Supreme Court also has indicated that the double jeopardy rule need not be mechanically applied and that the balancing of the defendant's and the public's interest is within the discretion of the trial court. *United States v. Jorn*, (1971) 400 U.S. 470, 91 S.Ct. 547, 27 L.Ed.2d 543. Moreover, the Supreme Court has held that the defendant need not agree to the withdrawal of a case already submitted to the jury in order to raise a double jeopardy question if the record discloses that there was a manifest necessity for the withdrawal and the trial court acted reasonably within its discretion to make that finding. This can be true even though a trial court did not make an express finding that there was a manifest necessity. *Arizona v. Washington*, (1978) 434 U.S. 497, 98 S.Ct. 824, 54 L.Ed.2d 717.

██ After Appellant's Motion to Dismiss was denied but prior to his second trial, he applied to this Court for a writ of mandate and prohibition asking that the Marion Superior Court be required to dismiss the action and enter judgment in his behalf. Said writ was denied for the reason that the grant or denial of a motion for mistrial falls within the discretion of the trial court and is not a proper subject for a writ of mandate or prohibition since the legal remedy on appeal is adequate. 271 Ind. 174, 391 N.E.2d 596. Appellant also applied for relief by filing a *habeas corpus* action in the Southern District of the United States District Court in Indiana. He again was denied relief. He appealed the District Court's ruling to the Seventh Circuit Court of Appeals who affirmed the District Court holding that Appellant was not entitled to the relief he sought. We now hold that the grant or denial of a motion for mistrial falls within the discretion of the trial judge

who will be reversed only when an abuse of judicial discretion is demonstrated. *Bean v. State*, (1978) 267 Ind. 528, 371 N.E.2d 713, *reh. denied; Short v. State*, (1968) 250 Ind. 459, 237 N.E.2d 258. We note in passing that a statute in effect during the time this cause was tried provided, *inter alia,* that a prosecution is not barred if prejudicial conduct in or outside the courtroom made it impossible to proceed with the trial without injustice to either the defendant or the State. Ind.Code § 35–41–4–3 (Burns 1979).

██ The instant trial court noted that the recalcitrant coroner had so conducted himself that the credibility of the evidence before the jury in this serious criminal matter was suspect and threatened to make the trial into a "circus." The trial judge found no alternative means of rectifying the situation and found it necessary to withdraw submission from the jury and to start again in order that all might be served by a fair trial. As a reviewing court, we must determine whether the trial court exercised sound discretion in declaring a mistrial and, in doing so, we must accord great deference to the trial judge's decision since he is in the best position to determine the impact of the disruptive events before the jury. *Washington, supra.* The instant trial judge determined that Dr. Aguilar's performance not only adversely affected the State's case but also prevented a fair trial for both sides. The record demonstrates the manifest necessity justifying the trial judge in granting the mistrial. Appellant's prosecution in the second trial therefore was not barred by double jeopardy. It follows that the trial court properly denied Appellant's Motion to Dismiss and Discharge.

██ Appellant further argues that he was entitled to a separate trial on the issue of double jeopardy and that he had a right to submit said issue to the second jury that tried him. The trial court granted the State's motion *in limine* thereby prohibiting Appellant from advising the second jury of the events which transpired before

the first jury. Appellant subsequently submitted to the trial court certain proposed final instructions to advise the second jury of the provisions of the Indiana and United States Constitutions which prohibit the placement of a defendant into jeopardy more than once. The trial court refused to give these instructions. Appellant now contends that he had a right to present a double jeopardy issue to the second jury pursuant to holdings by this Court that double jeopardy may be proved as a defense under a plea of not guilty. *Greenwalt v. State*, (1965) 246 Ind. 608, 209 N.E.2d 254; *Holt v. State*, (1945) 223 Ind. 217, 59 N.E.2d 563. It is true that those cases so hold. It is also true that a criminal prosecution can develop such that the question of whether or not the defendant previously had been put into jeopardy for the same crime might properly be presented to a jury. Such is not the case here, however. There is no double jeopardy defense issue in this case. As we already have indicated in this opinion, the determinations made by the trial judge in the instant case were within his province and authority. These were legal determinations to be made by the judge and not by the jury. There was, therefore, no issue for the jury to decide in regard to any double jeopardy question and it would have been improper to submit a double jeopardy question to them. In fact, to have submitted a rendition of the events which took place before the first jury to the second jury would have frustrated the very purpose for withdrawing this case from the first jury by placing the same problems before the second jury. It also would have required the second jury to second guess the trial judge in his exercise of judicial discretion. Accordingly, the trial court properly denied Appellant a separate trial on the issue of double jeopardy, properly granted the State's Motion *in limine* and properly refused to submit the proposed instructions to the jury which would have advised them about the law of double jeopardy as it relates to the instant issue.

■ Although Appellant was sentenced to consecutive terms of imprisonment, the trial court failed to set forth specific reasons for imposing consecutive sentences. The State conceded that the trial judge erred by not properly stating his reasons or the findings of aggravating or mitigating circumstances on which he based his judgment of consecutive sentences. *See Spinks v. State*, (1982) Ind., 437 N.E.2d 963; *Page v. State*, (1981) Ind., 424 N.E.2d 1021, *on remand* (1982) Ind., 442 N.E.2d 977, *reh. denied* (1983). This cause accordingly was remanded to the trial court with directions to the trial judge to submit his reasons for imposing consecutive sentences pursuant to Ind.Code § 35–4.1–4–3 [Ind. Code § 35–50–1A–3 (Burns 1979) replaced by Ind.Code § 35–38–1–3 (Burns Supp. 1983) ] and the above cited cases. The trial judge promptly complied with said order. His findings in support of consecutive sentencing included a determination that Appellant's case involved two separate murders committed in execution style on two defenseless women who possessed no weapons. The trial judge further found that the victims were shot by shotgun in "cold blood" with a distinct lapse of time intervening between the two killings. The trial judge also found that the imposition of a reduced sentence would depreciate the seriousness of Appellant's crimes. The record amply supports the trial judge in his finding these facts. We therefore hold that Appellant's consecutive forty year sentences are not manifestly unreasonable in light of the nature of the offenses and the character of the offender.

The trial court is in all things affirmed.

GIVAN, C.J., and HUNTER and PRENTICE, JJ., concur.

DeBRULER, J., concurs in result.