**Kenneth Ray TYSON, Appellant
(Defendant Below),**

v.

**STATE of Indiana, Appellee
(Plaintiff Below).**

**No. 41A04–8904–CR–122.**

Court of Appeals of Indiana,
Fourth District.

Sept. 14, 1989.

---

John P. Wilson, Wilson Limeberry & Tandy, Greenwood, for appellant.

Linley E. Pearson, Atty. Gen., Arthur Thaddeus Perry, Deputy Atty. Gen., Office of Atty. Gen., Indianapolis, for appellee.

CONOVER, Judge.

Defendant–Appellant Kenneth Tyson (Tyson) appeals his conviction for burglary, a class B felony, and theft, a class D felony. IND.CODE 35–43–2–1, 35–43–4–2.

We reverse.

Tyson presents seven issues for our review. Because we reverse, we address only the issue of whether a prosecution witness's failure to appear at trial constituted a "manifest necessity" for declaring a mistrial in the face of Tyson's double jeopardy claim on retrial.

In January, 1988, Susan Elkins (Elkins) was driving home with her two children at approximately 6:30 p.m. As they approached home, Elkins noticed a Chevette with no lights on parked in front of her house. As she neared the house, she noticed several of her family's possessions,

such as a stereo and television sets, were laying in the yard approximately five feet from the back of the Chevette. Elkins parked next to the Chevette and spoke with Kimberly Gregory (Gregory), the woman inside. When asked if she had seen anyone enter the Elkins's home, Gregory answered no, then explained she was sitting in front of the house to look for a particular street. Tyson, without Elkins knowing, slipped into the Chevette and Gregory drove away. As it pulled away, Elkins noted the car's license plate number. Later when Elkins entered her home, she found the front door broken in and her house ransacked.

After tracing the Chevette's license plate number to Gregory, the police connected Tyson to the crime. Tyson was charged by information with burglary and theft. A trial by jury was convened, but was later deemed a mistrial, over Tyson's objection. A second jury trial was then convened, after which Tyson was convicted of both counts. He was sentenced to consecutive terms of twenty and four years. Tyson now appeals.

Additional facts as necessary appear below.

Tyson contends jeopardy attached during the first trial, thus the initiation of the second trial constituted double jeopardy. He therefore claims the trial court erred by granting the State's motion for a mistrial and by denying his motions for discharge or a directed verdict and dismissal.

To fully understand Tyson's argument, the procedural posture of the case must be recounted. At the first trial, the jury was convened and five witnesses testified for the prosecution. Gregory, the sixth witness, failed to appear in court pursuant to a subpoena issued by the State. Tyson moved for discharge or directed verdict, which motion was denied. The State obtained continuances in order to locate Gregory; however, unable to locate her, the State moved for a mistrial, which was granted over Tyson's objection. The cause was re-set for trial on a subsequent date. At the commencement of the second trial, Tyson moved the court for discharge based on double jeopardy which the court denied.

The jury was convened and after the first witness for the State testified, Tyson's motion for dismissal was denied. At the conclusion of the State's case-in-chief, Tyson moved for judgment on the evidence, which was also denied. Tyson presented his defense, then the jury returned guilty verdicts on both counts.

It should be noted at the outset the decision to declare a mistrial is within the trial court's sound discretion. *White v. State* (1984), Ind., 460 N.E.2d 132, 135. Such a decision will be reversed only when an abuse of discretion is demonstrated. *Id.* Upon review, great deference must be paid to the trial court's decision. *Id.*

It is apparent from Tyson's argument the central question is whether manifest necessity required the first jury's discharge so as to permit Tyson's second trial for the same offense. I.C. 35–41–4–3 provides:

Sec. 3. (a) A prosecution is barred if there was a former prosecution of the defendant based on the same facts and for commission of the same offense and if:

(1) the former prosecution resulted in an acquittal or a conviction of the defendant ... or

(2) the former prosecution was terminated after the jury was impaneled and sworn or, in a trial by the court without a jury, after the first witness was sworn, unless (i) the defendant consented to the termination or waived, by motion to dismiss or otherwise, his right to object to the termination, (ii) it was physically impossible to proceed with the trial in conformity with law, (iii) there was a legal defect in the proceedings that would make any judgment entered upon a verdict reversible as a matter of law, (iv) prejudicial conduct, in or outside the courtroom, made it impossible to proceed with the trial without injustice to either the defendant or the state, (v) the jury was unable to agree on a verdict, or (vi) false statements of a juror on voir dire prevented a fair trial.

(b) If the prosecuting authority brought about any of the circumstances in subdivisions (a)(2)(i) through (a)(2)(vi) of this section, with intent to cause termination of the trial, another prosecution is barred.

This statute is a recognition and codification of the prohibition against double jeopardy provided for in the Fifth Amendment to the United States Constitution[1], made applicable to the states through the Fourteenth Amendment, and Article I, Section Fourteen of the Constitution of the State of Indiana.[2]

As a general rule, jeopardy attaches when the jury is impaneled and sworn. *Phillippe v. State* (1984), Ind.App., 458 N.E.2d 1159, 1160; *Crim v. State* (1973), 156 Ind.App. 66, 294 N.E.2d 822, 829. Further, when a defendant in a criminal prosecution is brought to trial, and the cause is dismissed over his objection, the same is equivalent to an acquittal and he has been put in jeopardy and cannot again be put in jeopardy for the same offense. *Maddox v. State* (1951), 230 Ind. 92, 102 N.E.2d 225, 228. This is based on the belief the state should not be permitted to subject a criminal defendant to undue embarrassment, expense, and ordeal by repeatedly attempting to convict him of an alleged offense. *Phillippe, supra,* at 1161, citing *United States v. Jorn* (1971), 400 U.S. 470, 91 S.Ct. 547, 27 L.Ed.2d 543. A defendant has a valued right to have his trial completed by a particular tribunal. *Arizona v. Washington* (1978), 434 U.S. 497, 98 S.Ct. 824, 54 L.Ed.2d 717. However, in some limited circumstances, a defendant's rights must be subordinated to the public's interest in fair trials and just judgments. *Downum v. United States* (1963), 372 U.S. 734, 83 S.Ct. 1033, 10

---

**1.** The Fifth Amendment to the Constitution of the United States provides in part:

Nor shall any person be subject for the same offense to be twice put in jeopardy of life or limb ...

**2.** Article I, Section 14, of the Constitution of the State of Indiana provides:

No person shall be put in jeopardy twice for the same offense. No person, in any criminal prosecution, shall be compelled to testify against himself.

L.Ed.2d 100; *Phillippe, supra,* at 1161. Thus, retrials are not always barred by the double jeopardy clause. *Id.* at 1163.

Those cases where double jeopardy is not applied fall into one of several groups, namely 1) waiver, 2) consent, 3) technical defect, and 4) manifest necessity. Here, the trial court based its decision on the "manifest necessity of the absconding witness, the emergency caused by her absence, the fact the State had taken all reasonable steps ... to procure her attendance and the best interests of the public and the community." (R. 114).

The rule of manifest necessity was first announced in *United States v. Perez* (1824), 22 U.S. (9 Wheat.) 579, 6 L.Ed. 165. In *Perez,* the trial judge discharged the jury, without the consent of the defendant or the government, because the jury members were unable to agree. In response to the defendant's double jeopardy claim, the United States Supreme Court stated:

> ... We think, that in all cases of this nature, the law has invested Courts of justice with the authority to discharge a jury from giving any verdict whenever, in their opinion, taking all the circumstances into consideration, there is a manifest necessity for the act, or the ends of public justice would otherwise be defeated. They are to exercise a sound discretion on the subject ... To be sure, the power ought to be used with the greatest caution, under urgent circumstances, and for very plain and obvious causes; ...

*Id. Perez* created the test for determining whether an initial mistrial followed by a second trial constitutes a violation of the prohibition against double jeopardy. *Brown v. State* (1979), 181 Ind.App. 102, 390 N.E.2d 1058, 1063. Since *Perez,* the United States Supreme Court has consistently employed the manifest necessity test. *Id.* Just as consistently, the Supreme Court has refused to formulate a mechanical test to be applied to all circumstances. *Id.* See *Arizona v. Washington, supra; Illinois v. Somerville* (1973), 410 U.S. 458, 461, 93 S.Ct. 1066, 1069, 35 L.Ed.2d 425; *United States v. Jorn* (1971), 400 U.S. 470,

91 S.Ct. 547, 27 L.Ed.2d 543; *Downum, supra.* As the Court explained in *Arizona v. Washington, supra,* the term "manifest necessity" cannot be given a literal interpretation. Rather, the court must assume there are varying degrees of necessity and a "high degree" is required before a mistrial is declared. *Id.* at 506, 98 S.Ct. at 831.

Looking to related cases, in *Downum v. United States, supra,* after a jury was selected and sworn the prosecutor requested the jury be discharged because a key prosecution witness was not present. The witness had not been served with a summons and no other arrangements had been made to assure his presence. The trial judge granted the mistrial, over the defendant's objection. Later, after a second jury was impaneled, the defendant pled former jeopardy, which plea was overruled. The defendant was convicted by the second jury. On appeal, the United States Supreme Court held the second trial subjected the defendant to double jeopardy. In its discussion, the Supreme Court stated:

> Harassment of an accused by successive prosecutions or declaration of a mistrial so as to afford the prosecution a more favorable opportunity to convict are examples of when jeopardy attaches.

*Id.,* 372 U.S. at 736, 83 S.Ct. at 1034. The Court noted the prohibition against double jeopardy is not against being twice punished, but against being twice put in jeopardy. *Id.* The Court concluded by stating any doubt should be resolved in favor of the citizen's liberty, rather than the court's exercise of an unlimited, uncertain, and arbitrary judicial discretion. *Id.,* 372 U.S. at 738, 83 S.Ct. at 1035.

In *Cornero v. United States* (1931), 48 F.2d 69, 74 A.L.R. 797 (C.A. 9th Cir.) (cited with approval in *Downum, supra*), a trial was first continued because prosecution witnesses were not present and, when the witnesses failed to appear when the case was again called, the jury was discharged. The court held the mere absence of witnesses, discovered after the jury is impaneled, is insufficient to deprive the accused of his right to claim double jeopardy upon a subsequent trial where the jury is dis-

charged without the defendant's consent and notwithstanding his objection. *Id.* at 72. The court reasoned the district attorney "took a chance" when he impaneled the jury without first ascertaining the presence of the witnesses. The court stated the facts indicated the district attorney simply entered upon the trial without sufficient evidence to convict the defendant and, in such a factual setting, jeopardy attaches. *Id.* at 71.

In many cases, the Supreme Court has explicitly condemned the declaration of a mistrial for the purpose of assisting the State in obtaining a conviction in a second, more successful trial. In *Arizona v. Washington, supra,* the trial judge granted the State's motion for a mistrial after defense counsel made prejudicial comments during his opening statement. In discussing the propriety of discharging a jury, the Supreme Court stated the declaration of a mistrial requires a high degree of necessity. *Id.* at 506, 98 S.Ct. at 831. The Court went on to point out the strictest scrutiny must be applied when the basis for the mistrial is the unavailability of critical prosecution evidence or when the prosecutor appears to be using State resources to achieve a tactical advantage over the accused. *Id.* at 508, 98 S.Ct. at 832. Thus, it follows the prohibition against double jeopardy unquestionably forbids the prosecutor from using the first proceedings as a trial run of his case. *Id.*, at 509, 98 S.Ct. at 832 n. 24. Similarly, in *Gori v. United States* (1961), 367 U.S. 364, 81 S.Ct. 1523, 6 L.Ed.2d 901, the Court stated a trial judge abuses his discretion when he exercises his authority to help the prosecution. At a trial where the prosecution's case is proceeding badly, the trial judge abuses his discretion by affording the State another, more favorable opportunity to convict the accused. *Id.* at 369, 81 S.Ct. at 1526.

■ Indiana recognizes the manifest necessity doctrine. *See Phillippe, supra,* at 1163; *Whitehead v. State* (1983), Ind.App., 444 N.E.2d 1253, 1254; *Crim, supra,* 294 N.E.2d at 829; *Mooberry v. State* (1973),

157 Ind.App. 354, 300 N.E.2d 125. However, we find no cases approving a claim of manifest necessity when a prosecution witness fails to appear at trial. In *Maddox, supra,* however, our Supreme Court noted its disapproval of discharging a jury based on the absence of a prosecution witness.[3] The court said:

... If, under the circumstances in this case, it could be affirmed that such a legal necessity for the discharge of the jury without appellant's consent is shown to have arisen, then it would be an easy matter for a prosecuting attorney, in the midst of a criminal trial, to create a necessity for the discharge of the jury on the ground that the state's evidence was weak, but could be made stronger on another trial, or that some of his witnesses were absent, etc., and for these reasons secure the discharge of the jury, and subsequently place the accused party upon trial for the same offense. If such procedure could be sustained, then it might truthfully be said that the constitutional provision in question is as empty as a bubble, and of no avail in protecting an accused person against twice being put in jeopardy for the same offense. *Id.*, 102 N.E.2d at 229–230.

Under *Perez* and its progeny, the trial court erroneously discharged the jury when Gregory failed to appear for trial because there was no manifest necessity to do so. While Gregory's presence would have aided the State's case, the question here is not whether her presence would have been beneficial to the prosecution. The question is whether her absence created a manifest necessity warranting a mistrial.

It cannot be said the State's case was totally devoid of evidence because Gregory failed to appear. Five other witnesses testified. As proferred in *Cornero, supra,* the prosecutor should have ascertained the whereabouts of Gregory before the jury was sworn. The mistrial merely afforded the State a second, more favorable opportunity to convict Tyson. Because the record

---

3. In *Maddox, supra,* the trial judge discharged the jury because a juror was discovered to be incompetent, not because a witness failed to appear in court.

does not demonstrate a manifest necessity for granting a mistrial, the trial court abused its discretion in that regard. Tyson's prosecution in the second trial was consequently barred by the double jeopardy clauses of our state and federal constitutions.

Reversed.

SULLIVAN, J., concurs.

CHEZEM, P.J., dissents with opinion.

CHEZEM, Presiding Judge, dissenting.

I respectfully dissent. In this particular case, it would have been more than a minor disadvantage to the State, to have been required to proceed with the first trial, in the face of the deliberate refusal of Kimberly Gregory to obey a properly served subpoena.

The majority correctly states the law as to double jeopardy and that a manifest necessity may allow a retrial. However, the trial court found that the "manifest necessity of the absconding witness, the emergency caused by her absence, the fact that the State had taken all reasonable steps ...to procure her attendance and the best interest of the public and the community" required the granting of the mistrial. The following facts support the trial court's determination that it should declare a mistrial in the defendant's first trial:

Kimberly Gregory had been properly served with a subpoena;

Kimberly Gregory drove the vehicle in which the defendant left the scene of the crime;

Kimberly Gregory was the only witness who saw the defendant at the scene of the crime;

Kimberly Gregory found a gold chain that had been stolen in the burglary under the seat where the defendant had been sitting in her car;

Kimberly Gregory had an ongoing friendship with the defendant, and;

Her friendship with the defendant appeared to be the reason she failed to appear to testify and avoided the law enforcement officers attempting to find her.

There is evidence to support the trial court's finding and we should not reweigh the evidence to redetermine the importance of Kimberly Gregory's testimony.

To hold that a mistrial called under the facts of this case subjects the defendant to double jeopardy upon retrial puts an unfair burden on the State. Kimberly Gregory's testimony would have provided an important, perhaps, the only linking of the defendant to the crime.

The result in this case allows a friend or accomplice to trade off a ninety day sentence and five hundred dollar fine for a defendant's freedom from a lengthy sentence. A defendant may well encourage or procure the absence of a State's witness knowing that the prosecutor will have to proceed with the trial unable to present important or complete evidence.