**STATE of Indiana, Appellant,**

**v.**

**Hoyt GLASSCOCK, Appellee.**

**No. 49A05–0103–CR–104.**

Court of Appeals of Indiana.

Dec. 27, 2001.

Steve Carter, Attorney General of Indiana, Joseph A. Samreta, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellant.

## OPINION

SULLIVAN, Judge.

Appellant, the State of Indiana, challenges the trial court's grant of Appellant–Defendant Hoyt Glasscock's motion to dismiss. We affirm.

On October 12, 1998, the State charged Glasscock with three counts of Child Mo-

lesting as a Class A felony.[1] During Glasscock's jury trial on October 2, 2000, the alleged victim of the crimes, C.S., testified that she, her brother J.B., and her cousin A.T. went to Glasscock's home. C.S. testified that Glasscock provided them with alcohol and marijuana. C.S. further testified that she later passed out on Glasscock's couch. C.S. stated that the next thing she could remember was being dragged off of the couch and passing out again. C.S. testified that as she drifted in and out of consciousness, Glasscock got on top of her and she "felt something go inside [her]." Record at 172. C.S. said she later regained consciousness and returned to the couch. According to C.S., A.T. woke her up and told her to put on her underwear and shorts, which had been removed. C.S. said she then followed Glasscock's instructions to get in his bed, where Glasscock laid next to her. C.S. testified that when she awoke, her underwear and shorts had again been removed.

The third witness called by the State was A.T. During direct examination, the State questioned A.T. regarding whether she watched any videotapes while at Glasscock's house the evening of the alleged molestation. In an attempt to refresh the witness's memory, the prosecutor showed A.T. portions of her deposition in which she stated that she and the other children watched a videotape of the birth of Glasscock's daughter. A.T. responded that she could not remember giving that answer during her deposition. The following exchange then took place:

"[Prosecutor]: But that's what you said in your deposition; correct?

[A.T.]: Yes.

[Prosecutor]: You were under oath when you gave that deposition, so you told the truth?

[A.T.]: No.

[Prosecutor]: You didn't tell the truth in your deposition?

[A.T.]: No." Record at 230.

After this, the State asked to approach the bench, and the jury was removed from the courtroom. The trial court expressed concern that A.T. was either going to commit perjury or had already done so during her deposition, and, upon learning that A.T. was fourteen years old, advised her to consult with her parents and an attorney.

After consulting with her appointed attorney, A.T. exercised her Fifth Amendment right against self-incrimination and refused to testify. The trial court then asked the prosecutor if the State wished to grant A.T. immunity, but the State declined to do so. Faced with this situation, the trial court stated:

"Well, I don't think I have any other alternative but to declare a mistrial. I would hear arguments before I do that but so far I think the record reflects the witness did indicate she lied in front of the jury about some things in her deposition. The State at this point, since they aren't going to grant immunity, does not have the opportunity, based upon the exercise of the witnesses [sic] Fifth Amendment rights to develop further direct examination nor do you have the opportunity to exercise your constitutional right to cross-examine the witness based even on what she said before the jury. So, I'm not sure I have any other alternative." Record at 238.

Glasscock's counsel then objected to a mistrial, stating he believed the State could go forward without this witness, and asserting that he believed jeopardy had already attached. The trial court then stated that the question of double jeopardy would have to be determined later and stated,

1. Ind.Code § 35–42–4–3 (Burns Code Ed. Repl.1998).

"The Court reluctantly has to grant a mistrial." Record at 239.

On October 24, 2000, the State filed a memorandum of law regarding the double jeopardy issue and whether A.T.'s deposition would be admissible upon retrial. Glasscock filed a motion to dismiss and a memorandum in support thereof on November 8, 2000. That same day, the trial court held a hearing on these issues and denied both Glasscock's motion to dismiss and the State's request to admit A.T.'s deposition. Nevertheless, on November 11, 2000, the trial court changed its earlier ruling, and without explanation, granted Glasscock's motion to dismiss. Thereafter, on December 5, 2000, the State filed a motion to correct error which was denied by the trial court on December 12, 2000.

Upon appeal, the State contends that retrial of Glasscock is not barred by double jeopardy and the trial court therefore erred in granting Glasscock's motion to dismiss. The Fifth Amendment to the United States Constitution states that "nor shall any person be subject for the same offense to be twice put in jeopardy of life or limb."[2] *See also Blockburger v. United States,* 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306 (1932). Generally, jeopardy attaches when the jury is impaneled and sworn. *Tyson v. State,* 543 N.E.2d 415, 417 (Ind. Ct.App.1989). The declaration of a mistrial over the defendant's objection usually acts as an acquittal. *Hall v. State,* 722 N.E.2d 1280, 1282 (Ind.Ct.App.2000). The defendant has a valued right to have his trial completed by a particular tribunal. *Tyson,* 543 N.E.2d at 417. Nevertheless, if it is manifestly necessary to declare a mistrial, double jeopardy will not bar a retrial, even if the defendant objects. *Hall,* 722 N.E.2d at 1282.

The decision of whether to declare a mistrial is left to the sound discretion of the trial court. *Id.* Upon appeal, we review the trial court's decision to grant a mistrial for an abuse of discretion, using "manifest necessity" as the underlying test. *Id.* Manifest necessity contemplates a sudden and overwhelming emergency beyond the control of the court. *Domangue v. State,* 654 N.E.2d 1, 3 (Ind. Ct.App.1995). Judicial or prosecutorial error cannot create manifest necessity, which instead must arise from circumstances outside of their control. *Id.* Still, a mistrial is an extreme remedy in a criminal case and should be granted only when nothing else can rectify the situation. *Hall,* 722 N.E.2d at 1282.

Here, the trial court declared a mistrial *sua sponte,* and Glasscock objected. Thus, the question before us is whether or not there was a manifest necessity for the trial court to grant a mistrial. If there was, Glasscock may be retried, and the trial court erred in granting his motion to dismiss; if there was not, retrial of Glasscock is barred by double jeopardy, and the trial court properly granted his motion to dismiss.

We agree with the State that the trial court's comments at trial indicate that it then believed that declaring a mistrial was necessary. What makes the situation before us somewhat unique is that the very judge who declared the mistrial

2. The State additionally cites Article 1, Section 14 of the Indiana Constitution, which also contains a prohibition against double jeopardy, *see Richardson v. State,* 717 N.E.2d 32 (Ind.1999), but makes no separate argument supporting the use of a different standard under the Indiana Constitution. Thus, any state constitutional argument is waived. *See Butler v. State,* 724 N.E.2d 600, 602 n. 1 (Ind.2000). We also note that Ind.Code § 35-41-4-3 contains statutory prohibitions against double jeopardy. Yet the State neither cites nor makes any argument regarding this statute. Therefore, we focus solely upon a Fifth Amendment analysis. *See Butler,* 724 N.E.2d at 601 n. 1.

subsequently granted Glasscock's motion to dismiss. After the trial court declared the mistrial, both parties raised the issue of double jeopardy before the trial court via memoranda and oral argument. With this information before it, the trial court, after initially denying, granted Glasscock's motion to dismiss. It is presumed that courts know and follow the applicable law. *Moran v. State,* 622 N.E.2d 157, 159 (Ind. 1993). Thus, the implication of these events is that, after further reflection on the matter, the trial court determined that a mistrial was not manifestly necessary. Upon review of the record, we cannot say the trial court abused its discretion when it granted Glasscock's motion to dismiss.

Although A.T. refused to testify, she was not the State's only witness. Indeed, the alleged victim, C.S., had already given testimony in which she accused Glasscock of molesting her. The State claims that they were prevented from conducting further direct examination of A.T. We note, however, that the State could have compelled A.T. to testify by granting her immunity, but chose not to do so. The strictest scrutiny must be applied when the basis for the mistrial is the unavailability of critical prosecution evidence, and the trial court abuses its discretion when it affords the State another, more favorable opportunity to convict the accused. *Tyson,* 543 N.E.2d at 419.

In *Tyson,* one of the State's witnesses failed to appear, and the trial court declared a mistrial. Upon appeal, this court reversed, noting that the State's case was not totally devoid of evidence because five other witnesses testified. *Id.* In *White v. State,* 460 N.E.2d 132 (Ind.1984), the trial court declared a mistrial after the deputy coroner, called to testify by the State, refused, unless he was paid a higher fee, to give an opinion as to the victims' cause of death. The *White* court upheld the trial court's determination that a manifest necessity existed, because the coroner's actions threatened to turn the trial into a "circus." *Id.* at 135. Here, A.T. did refuse to testify. However, unlike in *White,* the State could have compelled her testimony by granting immunity. In addition, as in *Tyson,* the State's case was not totally devoid of evidence without A.T.'s testimony.

Upon appeal, the State makes much of the fact that, after A.T. exercised her right to remain silent, Glasscock no longer had the opportunity to cross-examine her. However, Glasscock objected to the mistrial. He was therefore willing to continue with trial knowing that he would be unable to cross-examine A.T.

Although we recognize that this is a close case, we cannot say as a matter of law that A.T.'s exercise of her right to remain silent created a manifest necessity for a retrial. Thus, we cannot say that the trial court abused its discretion when it granted Glasscock's motion for dismissal.

The judgment of the trial court is affirmed.

MATTINGLY-MAY, J., and BARNES, J., concur.